# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DENTAL EXPERTS, LLC, THE DENTAL CLINIC, LLC, PREMIER DENTAL CLINIC, LLC, STUDIO DENTAL, LLC, BRADLEY DENTAL, LLC, DENTAL EXPERTS, PA, ELITE DENTAL, LLC, DENTAL DREAMS, LLC (PA), DENTAL DREAMS, PLLC (MI), DENTAL DREAMS, PLLC (D.C.), FAMILY DENTAL, LLC, DENTAL DREAMS, LLC (MD), DENTAL DREAMS OF EDMONSON, LLC, and DENTAL DREAMS, LLC (MA),<br><br>Plaintiffs,<br><br>vs.<br><br>MASSACHUSETTS BAY INSURANCE COMPANY,<br><br>Defendant. | Case No. 20 C 5887 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case, all dental offices, operate dental practices in the District of Columbia, Illinois, Maryland, Massachusetts, Michigan, Pennsylvania, South Carolina, and Texas. The Court will refer to them collectively as Dental Experts. Dental Experts purchased a property and casualty insurance policy from the defendant, Massachusetts Bay Insurance Company (Massachusetts Bay); all of the plaintiffs' offices are specifically identified as insured locations under the policy. The insurance policy provided coverage between December 1, 2019 and December 1, 2020.

Beginning in March 2020, state and local authorities nationwide issued orders

limiting or suspending operations of non-essential businesses due to the coronavirus pandemic. Dental Experts complied with these orders and contends that it lost business income as a result of suspending its operations in seven states and the District of Columbia. It filed claims under its insurance policy with Massachusetts Bay to recover for those losses. After Massachusetts Bay denied the claims, Dental Experts filed this lawsuit seeking to recover amounts it contends are due under various provisions of the policy. Dental Experts also asserted a claim in which it alleged that Massachusetts Bay acted in bad faith.

In its complaint, Dental Experts alleges that Massachusetts Bay violated its obligations under a "disease contamination provision" of the policy; it asserts claims for breach of contract based on the insurer's denial of coverage under "business income" and "civil authority" provisions; and it contends that the insurer acted in bad faith when it denied or limited coverage based on these provisions of the policy. Massachusetts Bay has moved to dismiss the claims in counts 9 through 22 of the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). It argues that the policy does not cover the losses Dental Experts alleges under the business income and civil authority provisions.

**Background**

All of the plaintiffs in this lawsuit are dental offices affiliated with a single entity—Dental Experts. Dental Experts operates in several locations: the District of Columbia, Illinois, Maryland, Massachusetts, Michigan, Pennsylvania, South Carolina, and Texas. All of its offices are covered by Massachusetts Bay's insurance policy. As indicated, the policy covers the period from December 1, 2019 to December 1, 2020. Within that

2

period, the novel coronavirus began to spread worldwide.

In March 2020, state and local authorities nationwide entered orders suspending the operations of non-essential businesses as a response to the coronavirus global pandemic. *See, e.g.*, Def.'s Ex. 4 (dkt. no. 14-4). Dental Experts contends that it suspended its operations to comply with these orders and consequently lost business income. It filed claims with Massachusetts Bay, seeking to recover amounts under three distinct provisions of the policy: (1) business income; (2) disease contamination; and (3) civil authority.

The business income provision under the insurance policy reads as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

Def.'s Ex. 1, Policy at 270 (dkt. no. 14-1). The civil authority provision reads as follows:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
>   (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>   (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at 271. The disease contamination provision reads as follows:

> We will pay the actual covered loss of "business income" or "extra expense" you sustain due to the necessary "suspension" or delay of your "operations" during the "period of Restoration". The "suspension" must be caused by a disease contamination event declared by the National Center for Disease Control, or the applicable city, county or state Department of Health.

*Id.* at 202.

Dental Experts contends that it is entitled to coverage under each of these provisions of the Massachusetts Bay policy. Regarding the disease contamination provision, Massachusetts Bay concluded that Dental Experts was entitled to coverage and paid it a total of $25,000 for all of its offices' closures. But Dental Experts alleges that this payment was insufficient because it was based on Massachusetts Bay's assessment that the business income Dental Experts lost was a single "occurrence" of disease contamination, rather than multiple occurrences affecting several of Dental Experts' offices across seven states and the District of Columbia. Accordingly, Dental Experts contends that the policy entitles it to over $500,000 in lost business income—$25,000 per location—and that Massachusetts Bay acted in bad faith when paid a significantly lower amount than what it owed.

Dental Experts also says that Massachusetts Bay breached its obligations under the insurance contract when it denied claims under the business income and civil authority provisions. Massachusetts Bay contends that Dental Experts' losses are not covered by either of these provisions. It makes two key arguments. First, Massachusetts Bay contends that Dental Experts did not suffer direct physical loss within the meaning of the policy. Second, it argues that another provision of the policy—the "virus exclusion" bars Dental Experts' claims. The virus exclusion provision

4

reads as follows:

> We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.
>
> However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

Policy at 298. Dental Experts contends that the virus exclusion in the insurance contract does not bar coverage under the business income and civil authority provisions.

Dental Experts filed this lawsuit against Massachusetts Bay in Illinois state court in August 2020. The insurer removed the case to this Court in October 2020 based on diversity of citizenship. In its complaint, Dental Experts asserts numerous claims based on the laws of the states in which it operates dental practices. Specifically, Dental Experts alleges that Massachusetts Bay breached its obligations under the disease contamination provision (counts 1-8), breached the insurance contract by denying coverage under the business income and civil authority provisions (counts 9-16), and acted in bad faith (counts 17-22). Massachusetts Bay has moved to dismiss Dental Experts' complaint with respect to the breach of contract (counts 9-16) and bad faith claims (counts 17-22) under Federal Rule of Civil Procedure 12(b)(6). The bad faith claims include allegations concerning the insurer's actions with respect to under the disease contamination, business income, and civil authority provisions.

## Discussion

On a motion to dismiss for failure to state a claim, the Court takes the plaintiff's factual allegations as true, draws reasonable inferences in the plaintiff's favor, and

assesses whether the plaintiff has asserted a plausible basis for relief.  *See, e.g.*, *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

The parties agree that the insurance policy is governed by Illinois law.  "Where the parties agree on the law that governs a dispute, and there is at least a reasonable relation between the dispute and the forum whose law has been selected by the parties, we will forego an independent analysis of the choice-of-law issue and apply the parties' choice."  *Harter v. Iowa Grain Co.*, 220 F.3d 544, 559 n.13 (7th Cir. 2000) (quotations omitted and alterations accepted).  In this case, the insurance contract was negotiated in Illinois and Massachusetts Bay delivered the contract to Dental Experts at its office in Chicago, Illinois.  The Court will therefore apply Illinois law to the parties' insurance contract interpretation dispute.

Construction of an insurance policy is a question of law.  *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 309, 856 N.E.2d 338, 342 (2006).  "When construing the language of an insurance policy, a court is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy."  *Id.* at 311, 856 N.E.2d at 342-43.  "An insurance policy must be construed as a whole, giving effect to every provision."  *Id.*  "if the words used in the policy are unambiguous, they are given their plain, ordinary, and popular meaning."  *Id.*  "Although insurance policies are construed liberally in favor of coverage, this rule of construction comes into play only when the policy language is ambiguous."  *Id.*  "Words are ambiguous if they are reasonably susceptible to more than one interpretation, not simply if the parties can suggest creative possibilities for their meaning, and a court will not search for ambiguity

where there is none." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill. 2d 352, 363, 860 N.E.2d 307, 314 (2006) (citations omitted).

In its complaint, Dental Experts alleges that it is entitled to recover for loss of business income caused by coronavirus shutdown orders pursuant to the business income and civil authority provisions of the insurance policy. It also contends that Massachusetts Bay acted in bad faith under the law of various states' by denying coverage for losses it incurred due to shutdown orders based on these provisions, as well as for paying only $25,000 under the disease contamination provision. *See* Compl. ¶¶ 256-292. In its response brief, Dental Experts says it has sufficiently alleged a bad faith denial of insurance coverage because Massachusetts Bay "denied the vast majority of Plaintiffs' claims without conducting the reasonable investigation required by law and rendered an internally inconsistent coverage determination without explanation or justification." Pl.'s Resp. Mem. at 18 (dkt. no. 17).

Massachusetts Bay contends that the "virus exclusion" in the policy excludes coverage for Dental Experts' insurance claims based on the business income and civil authority provisions. *See* Policy at 298. Specifically, Massachusetts Bay argues that even if Dental Experts "could somehow show direct physical loss of or damage to property, there would be no coverage" under either provision because the "plain and unambiguous language of the Virus Exclusion" reflects that it will not pay for "'loss or damage caused by or resulting from any virus . . . .'" Def.'s Opening Mem. at 14 (dkt. no. 14) (quoting Policy at 298). Massachusetts Bay cites numerous cases from other jurisdictions in which federal district courts have concluded that similar virus exclusions bar coverage for insured parties' claims for coronavirus-related losses. *See id.* at 14-15;

7

*see, e.g., Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 488 F. Supp. 3d 904, 907 (N.D. Cal. 2020) (concluding that the virus exclusion provision "excludes from its coverage any loss caused directly or indirectly by a virus"); *Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 429 (E.D. Pa. 2020) (granting insurer's motion to dismiss because "an unambiguous virus exclusion bars coverage"). In response, Dental Experts contends that the virus exclusion in the policy should not apply because it was state and local authorities' shutdown orders, not the virus itself, that caused its loss of business income. Pls.' Resp. Mem. at 16-17.

The Court concludes that the virus exclusion is plain and unambiguous: it excludes loss or damage "caused by *or resulting* from any virus." Policy at 298 (emphasis added). Given the "resulting from" language, Dental Experts' argument—that the shutdown orders, not the virus caused loss of business income—lacks merit. The shutdown orders were enacted in direct response to the coronavirus global pandemic; it therefore follows that within the meaning of the policy, any business income loss Dental Experts suffered due to a shutdown order resulted from the virus even if it one could say that the loss was not caused *directly* by the virus.

Although the Seventh Circuit has not addressed whether a virus exclusion provision in an insurance policy bars an insured party from claiming loss of business income due to the coronavirus pandemic, several judges of this Court have concluded—in similar coronavirus-related insurance cases—that it does. *See, e.g., Riverwalk Seafood Grill Inc. v. Travelers Cas. Ins. Co.*, No. 20 C 3768, 2021 WL 81659, at *3 (N.D. Ill. Jan. 7, 2021) ("[T]he plain language of the Virus Exclusion is dispositive here and requires the Court to dismiss [plaintiff's] Complaint").

8

Judge Kocoras explained in *Riverwalk* that the virus exclusion provision unambiguously covered coronavirus-related claims. *Id.*; *see also Firenze Ventures LLC v. Twin City Fire Ins. Co.*, No. 20 C 4226, 2021 WL 1208991, at *4 (N.D. Ill. Mar. 31, 2021) ("[T]he court joins other courts to have interpreted comparable [virus exclusion] policy language in the same manner"); *Sojo's Studios, Inc. v. Citizens Ins. Co.*, No. 20 C 4780, 2021 WL 837623, at *2 (N.D. Ill. Mar 4, 2021) ("There is simply no doubt as to what the Virus Exclusion means and Plaintiffs' litigation tactics, however clever, cannot override clear, sweeping, and unambiguous language."); *Mashallah, Inc. v. West Bend Mut. Ins. Co.*, No. 20 C 5472, 2021 WL 679227, at *2 (N.D. Ill. Feb. 22, 2021) (rejecting argument that "Governor Pritzker's COVID-19 orders are an independent intervening cause" and concluding that virus exclusion bars claims); *AFM Mattress Co., LLC v. Motorists Com. Mut. Ins. Co.*, No. 20 C 3556, --- F. Supp. 3d ---, 2020 WL 6940984, at *2 (N.D. Ill. Nov. 25, 2020) ("Plaintiff's argument that its losses occurred because the Indiana and Illinois governmental entities issued shutdown orders, not because of the virus itself, is unpersuasive.").

For these reasons, the Court concludes that Dental Experts' claims that Massachusetts Bay breached the insurance contract when it denied coverage under the business income and civil authority provisions are not viable claims upon which relief may be granted. The dismissal of these claims is with prejudice, without leave to amend.

The Court next turns to Dental Experts' bad faith claims to the extent they are connected to denial of coverage under the business income and civil authority provisions. An Illinois statute, 215 Ill. Comp. Stat. 5/155, provides a remedy to

"insureds who encounter unnecessary difficulties resulting from an insurance company's unreasonable and vexatious refusal to honor its contract with the insured." *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 807 (7th Cir. 2002) (internal quotations omitted). "However, when an insurer denies the claim of an insured because no coverage exists, the insurer has not failed to honor its contractual obligations under an insurance policy." *Id.* "As such, Illinois courts allow a cause of action to proceed under Section 155 only if the insurer owed the insured benefits under the terms of the policy." *Id.* In this case, the "virus exclusion" in the insurance policy undercuts all of Dental Experts' breach of contract claims based on the business income and civil authority provisions. Accordingly, because no coverage exists under either provision, Massachusetts Bay has not failed to meet its contractual obligations under the law of any of the states where a Dental Experts office is located. For this reason, Dental Experts has not asserted a plausible basis for relief based on bad faith, whether under Illinois law or under the law of any of the other states at issue. Dental Experts' bad faith claims are therefore dismissed with prejudice to the extent the claims arise from the insurer's handling of the business income and civil authority coverage.

**2. Disease contamination provision**

In counts 17 through 22 of its complaint, Dental Experts also alleges bad faith in connection to Massachusetts Bay's failure to pay the full amount that Dental Experts contends was due under the disease contamination provision of the insurance policy. *See* Policy at 202. Specifically, Dental Experts alleges that it filed insurance claims with Massachusetts Bay under the "disease contamination" provision of the policy for loss of business income. Dental Experts contends that it operates numerous offices within

10

each state and the District of Columbia.  For instance, in Illinois alone, it has eighteen dental clinics that were affected by Governor Pritzker's shutdown order.  Compl. ¶ 52-28.  Dental Experts alleges that it is entitled to a recovery of up to $25,000 for each office that suspended operations due to the coronavirus shutdown orders.  *Id.* ¶ 62.  The proof of loss it submitted to Massachusetts Bay reflected a total of more than $500,000 in losses.  *Id.* ¶ 63.

Dental Experts contends that Massachusetts Bay improperly treated the disease contamination claim as a single "occurrence," rather than eighteen separate occurrences, and sent Dental Experts a single check in the amount of $25,000.  *Id.* ¶ 66.  Under the policy, "occurrence" is defined as "all loss or damage that is attributable" to "[a]n act, event, cause or series of similar, related acts, events or causes involving one or more persons" or "[a]n act, event, cause or series of similar, related acts, events or causes not involving any person."  Policy at 156.  Dental Experts says that Massachusetts Bay—in bad faith—treated its losses in connection to coronavirus shutdown orders "as a single occurrence" rather than multiple ones.  Pl.'s Resp. Mem. at 18.  In a single footnote in its opening memorandum, Massachusetts Bay summarily states that the dispute regarding whether Dental Experts was entitled to recover a higher amount for its disease contamination claim "is not addressed in this Motion, but Massachusetts Bay intends to bring a motion for summary judgment on this issue later in this case."  Def.'s Opening Mem. at 1.

"Whether an insurer acted unreasonably or vexatiously" within the meaning of section 155 "is a question of fact."  *Med. Prot. Co. v. Kim*, 507 F.3d 1076, 1086 (7th Cir. 2007).  The requirements to show bad faith under Maryland, Massachusetts,

11

Pennsylvania, South Carolina, and Texas law are similar to what is required under Illinois law. See Def.'s Opening Mem. at 15-17. In the current version of Dental Experts' complaint, however, its factual allegations relating to bad faith in connection to the disease contamination claim are inappropriately conclusory. See, e.g., Compl. ¶ 258 ("[Massachusetts Bay] failed to investigate Illinois Dentists' claims and failed to reimburse Illinois Dentists for each occurrence as required under the Policy."), ¶ 269 ("[Massachusetts Bay]'s conduct . . . was and continues to be unreasonable and vexatious . . . without proper justification and without a reasonable investigation.") . "Allegations that state legal conclusions or threadbare recitals of the elements of a cause of action are not entitled to the assumption of truth" in addressing a motion to dismiss under Rule 12(b)(6). Meyer, 796 F.3d at 827 (cleaned up). For a plaintiff's complaint to survive a motion to dismiss, it must state "sufficient facts to plausibly suggest that the plaintiff has a right to relief." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Dental Experts' complaint falls short on the question of bad faith in connection with the disease contamination claims because it essentially just recites the elements of a section 155 claim. For this reason, the Court dismisses the bad faith claims with leave to amend with respect to the claim of bad faith regarding the disease contamination coverage.

## Conclusion

For the foregoing reasons, the Court grants Massachusetts Bay's motion to dismiss [dkt. no. 10] counts 9 through 22 of the plaintiffs' complaint—the breach of contract (counts 9 through 16) and bad faith claims (counts 17 through 22). The bad

faith claims are dismissed with prejudice to the extent they concern the denials regarding the business income and civil authority coverages, and with leave to amend to the extent with concern the insurer's treatment of the disease contamination coverage. Any amended bad faith claims are to be filed by no later than May 17, 2021.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 1, 2021