IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENTAL EXPERTS, LLC, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 20 C 5887 |
| ) | |
| MASSACHUSETTS BAY INS. CO., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In spring 2020 at the onset of the coronavirus pandemic, Dental Experts closed its offices in states and jurisdictions—ten altogether—where executives issued orders requiring the closure of nonessential businesses. Dental Experts filed a claim with its insurer, Massachusetts Bay, for its business losses under a disease contamination provision in the insurance policy. Massachusetts Bay paid Dental Experts $25,000—the limit for a single "occurrence" under this provision. Dental Experts sued for breach of contract on the basis that it is entitled to coverage for multiple occurrences. Both parties have moved for summary judgment. For the reasons below, the Court grants summary judgment in favor of Dental Experts on the issue of liability.

## Background

The following facts are undisputed except where otherwise noted. The plaintiffs in this lawsuit operate dental practices affiliated with a single entity, Dental Experts. Specifically, the plaintiffs operate seventy-three dental offices across nine states and the District of Columbia. All of the practices were covered by an insurance policy issued

by Massachusetts Bay, which was in effect from December 1, 2019, to December 1, 2020. *See* Pls.' Stat. of Material Facts, Ex. B at 9, 12–13 (dkt. no. 44-2) (insurance policy). Within that period, the novel coronavirus pandemic began to spread worldwide.

In March 2020, as a response to the pandemic, state and local authorities nationwide issued executive orders suspending the operations of nonessential businesses. Dental Experts suspended its operations to comply with these orders and consequently lost business income. It filed claims with Massachusetts Bay, seeking to recover amounts under three distinct provisions of the policy: 1) business income; 2) disease contamination; and 3) civil authority. Only recovery under the disease contamination provision is at issue on the parties' motions for summary judgment.

The disease contamination provision reads as follows:

> We will pay the actual covered loss of "business income" or "extra expense" you sustain due to the necessary "suspension" or delay of your "operations" during the "period of Restoration". The "suspension" must be caused by a disease contamination event declared by the National Center for Disease Control, or the applicable city, county or state Department of Health.

*Id.* at 143. Coverage under this provision applies "on an 'occurrence' basis" and limits a claim to $25,000 per occurrence. *Id*. at 142. The policy defines an "occurrence" as "all loss or damage that is attributable to: a. An act, event, cause or series of similar, related acts, events or causes involving one or more persons; or b. An act, event, cause or series of similar, related acts, events or causes not involving any person." *Id*. at 337.

On April 27, 2020, Massachusetts Bay concluded that Dental Experts was entitled to coverage under the disease contamination provision and paid it a total of $25,000 for all of the office closures. Massachusetts Bay premised this on the determination that there was a single "occurrence" under the disease contamination

2

provision, not multiple occurrences.

Dental Experts filed this lawsuit against Massachusetts Bay in Illinois state court in August 2020. The insurer removed the case to this Court in October 2020 based on diversity of citizenship. On May 1, 2021, the Court granted Massachusetts Bay's motion to dismiss in part, with leave to amend to the extent the claims concerned the disease contamination coverage. *See Dental Experts, LLC v. Mass. Bay Ins. Co.*, 536 F. Supp. 3d 318 (N.D. Ill. 2021). Dental Experts filed an amended complaint on June 1, 2021, which contained ten breach of contract counts, each premised on the closure of offices in a different jurisdiction: Illinois, Louisiana, Maryland, Massachusetts, Michigan, Pennsylvania, South Carolina, Texas, Virginia, and the District of Columbia.

Both parties have now moved for summary judgment, though Dental Experts' motion is only on the issue of liability. Dental Experts premises its theory of liability on the argument that twenty different executive orders—two in each jurisdiction, except for Massachusetts, where there were three, and Texas, where there was one—each qualify as an occurrence as set forth in the policy. *See* Mem. of L. Supp. Pls.' Mot. for Partial Summ. J. at 2, 6–7 (dkt. no. 43).

**Discussion**

To obtain summary judgment, a party must demonstrate that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When parties file cross-motions for summary

judgment, courts "construe all inferences in favor of the party against whom the motion under consideration is made." *Cremation Soc'y of Ill., Inc. v. Int'l Bhd. of Teamsters Local 727*, 869 F.3d 610, 616 (7th Cir. 2017) (quoting *Rupcich v. UFCW Int'l Union, Local 881*, 833 F.3d 847, 853 (7th Cir. 2016)). The non-moving party must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019).

Both parties agree that Illinois law controls this case and, specifically, construction of the insurance policy. "Under Illinois law, the construction of an insurance policy is a question of law, and the court's goal is to determine the intent of the contracting parties." *Sokol & Co. v. Atl. Mut. Ins. Co.*, 430 F.3d 417, 420 (7th Cir. 2005). Courts will "give the terms of an unambiguous insurance policy their plain and ordinary meaning, reading the policy as a whole and considering 'the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract.'" *Mkt. St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 952 (7th Cir. 2020) (quoting *State Farm Mut. Auto. Ins. Co. v. Villicana*, 181 Ill. 2d 436, 441, 692 N.E.2d 1196, 1199 (1998)). "If a provision is susceptible to only one reasonable reading, no ambiguity exists, and it must be applied as written." *Id.*

The parties' cross motions for summary judgment turn on the issue of whether there was a single occurrence or multiple occurrences under the disease contamination provision of the insurance policy. Dental Experts argues that each executive order

4

qualifies as a separate occurrence, meaning Massachusetts Bay breached the contract by paying only for a single occurrence. Massachusetts Bay argues that there was a single occurrence and makes the following arguments in support: first, the coronavirus pandemic caused all of the closures, meaning the losses were attributable to a singular cause; and second, even if the executive orders caused the losses, they qualify as a "series of similar, related acts," such that there was only one occurrence.

As an initial matter, the Court agrees with Dental Experts that the executive orders are the operative event. From a proximate cause standpoint, it was the executive orders that forced Dental Experts to close its offices, not the pandemic itself. Governmental responses to the pandemic varied significantly across states and localities. Some governors never issued stay-at-home or shutdown orders, meaning dental offices in states like Iowa and Nebraska were not required to close, notwithstanding the outbreak of coronavirus disease in those states. It is also significant in this regard that each executive order particularized its directives to the unique circumstances of the state or locality—for example, the types of businesses required to close were not uniform from jurisdiction to jurisdiction—and the orders differed in terms of duration, prompting the need for renewal orders at differing intervals. *See* Pls.' Stat. of Material Facts ¶¶ 32–41 (dkt. no. 44) (listing the executive orders by jurisdiction). The Court finds that Dental Experts' losses are "attributable" to the executive orders, not the disease or the pandemic itself; no reasonable finder of fact could find otherwise. The executive orders are the operative occurrence. They triggered the "suspension" of Dental Experts' "operations" as set forth in the disease contamination provision of the insurance policy.

Although the executive orders are the operative events, there is still the question of whether they qualify as a single occurrence or multiple occurrences, as those terms are defined in the insurance policy. Illinois follows a cause-based rule for insurance policies that premise liability on a per-occurrence basis. *See Addison Ins. Co. v. Fay*, 232 Ill. 2d 446, 456, 905 N.E.2d 747, 753 (2009). Under a cause-based regime, the default rule is that "the number of occurrences is determined by referring to the cause or causes of the damages." *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 223 Ill. 2d 407, 418, 860 N.E.2d 280, 287 (2006); *see also Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 735 P.2d 451 (1987) ("Multiple acts causing a single injury will constitute multiple occurrences, while a single act will constitute a single occurrence even though it causes multiple injuries or multiple episodes of injury.").

The insurance policy in this case contains, however, a definitional provision that must be considered in addition to the default rule. This provision defines an "occurrence" as "[a]n act, event, cause or series of similar, related acts, events or causes."[1] Pls.' Stat. of Material Facts, Ex. B at 337 (dkt. no. 44-2).

Two cases in particular—*Nicor* and *Arizona Property*—help illustrate how this definitional provision modifies the default application of a cause-based regime. First is *Nicor*. During the sixties and seventies, the Nicor Gas Company contaminated hundreds of homes with mercury while replacing gas meters. There were two relevant insurance policies in effect during this time, the first in effect from 1961 to 1976 and the second from 1976 to 1978. Somewhat similar to Dental Experts' policy, the first policy

---

[1] The parties have not argued that the definitional language "involving one or more persons" or "not involving any person" affects the coverage dispute.

in *Nicor* defined an "occurrence" as "one happening or series of happenings arising out of or due to one event taking place during the term of this contract." *Nicor*, 223 Ill. at 413, 860 N.E.2d at 284. The second policy defined an "occurrence" as "(1) an accident, or (2) event or continuous or repeated exposure to conditions which result in bodily injury." *Id.*

The sole issue before the court was whether Nicor's liability arose from a single occurrence or multiple occurrences. After surveying decades of caselaw on cause-based occurrence liability, the Illinois Supreme Court ultimately agreed with the appellate court's reasoning: "where each asserted loss is the result of a separate and intervening human act . . . Illinois law will deem each such loss to have arisen from a separate occurrence within the meaning of liability policies containing language similar to that used in the policies issued to Nicor." *Id.* at 432, 860 N.E.2d at 294. The court therefore concluded that each home contamination qualified as a separate occurrence.

Next is *Arizona Property*. Although this case comes from Arizona, that state, like Illinois, follows a cause-based rule for occurrence-based liability, which makes the state's caselaw a useful reference point. *See Ariz. Prop.*, 153 Ariz. at 135, 735 P.2d at 457. *Arizona Property* concerned whether the failure of two doctors to properly examine a medical record qualified as a single occurrence or multiple occurrences under a professional liability policy. The insurance policy defined an "occurrence" as "any incident, act or omission, or series of related incidents, acts or omissions resulting in injury." *Id.* at 134, 735 P.2d at 456 (emphasis removed). The Arizona Supreme Court interpreted this definition "to exclude *causally related* acts from the [cause-based] rule that multiple causative acts constitute multiple occurrences." *Id.* at 135–36, 735 P.2d at

7

457–58.  In other words, "even though there have been multiple causative acts, there will be a single 'occurrence' if the acts are causally *related to each other* as well as to the final result."  *Id.*  Applying this rule, the court ultimately concluded that there were two occurrences because each doctor's failure was causally independent of the other.

Turning back to the case at hand, Dental Experts' insurance policy defines a "series of similar, related acts" as a single occurrence.  This language is similar to the occurrence definition ("series of happenings arising out of or due to one event") in the first *Nicor* policy.  *See Nicor*, 223 Ill. at 413, 860 N.E.2d at 284.  Also similar to *Nicor*, each of Dental Experts' claimed losses in this case was "the result of a separate and intervening human act"—specifically, executive orders issued separately by a number of different state or local governmental authorities.  *Id.* at 432, 860 N.E.2d at 294.  As in *Nicor*, the Court concludes that Dental Experts' losses qualify as multiple occurrences.

Although the Court finds *Nicor* instructive, the additional definitional language of "similar" and "related" in the present insurance policy slightly alters the analysis.  On this point, the policy language in *Arizona Property* ("series of related incidents [or] acts") is more like the language in the present policy, which also uses the adjective "related" to describe when a series of acts qualifies as a single occurrence.  The Court construes the "similar, related" language in the same manner as the court in *Arizona Property* construed the term "related"—it excludes acts that "are causally related to each other" from being considered as multiple occurrences.

The upshot of this language is that executive orders causally related to one another do not constitute separate occurrences.  No reasonable factfinder could construe an executive order that flows from a prior order by the same authority—in

8

other words, a subsequent executive order in the same jurisdiction that effectively served as a renewal—as a separate occurrence, as that order was causally dependent on the original order requiring closure. Because there are no disputed facts on the number and timing of the executive orders, ten of the twenty orders cannot constitute separate occurrences; this leaves just one order per jurisdiction. *See* Pls.' Stat. of Material Facts ¶¶ 32–41 (dkt. no. 44) (listing the executive orders by jurisdiction and their chronology). The remaining orders, however, are not causally related to one another; in other words, no reasonable jury could find that the orders issued by a governor in one state were caused by those entered by a governor in a different state.

For these reasons, Massachusetts Bay breached the parties' contract when it determined that Dental Experts was entitled to coverage for only a single occurrence under the disease contamination provision. Dental Experts is accordingly entitled to summary judgment on liability to this extent on its breach of contract claims.

## Conclusion

For the foregoing reasons, the Court grants the plaintiff's motion for partial summary judgment [dkt. no. 42] and denies the defendant's motion summary judgment [dkt. no. 45]. The Court sets the case for a status hearing on July 20, 2022 at 8:45 a.m. to set a schedule for further proceedings and discuss the possibility of settlement. The parties are directed to confer in this regard and are to file a joint status report on July 15, 2022 with an agreed proposed schedule, or separate proposals if they cannot agree, and a discussion regarding any settlement efforts to date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 7, 2022